**THE CHERCA.**

**SCHNELL et al. v. NAVIGANZIONE LIBERA TRIESTINA, S. A.**

No. 10814.

District Court, E. D. New York.
Dec. 2, 1930.

Joffe & Joffe, of New York City (Louis Joffe, of New York City, of counsel), for libelants.

Loomis & Ruebush, of New York City (Homer L. Loomis and Philip A. Donahue, both of New York City, of counsel), for claimants.

MOSCOWITZ, District Judge.

The libelants, who are importers, seek to recover for damage to a shipment of onions.

On December 15, 1927, Vincente Remoli shipped and placed on board the steamship Cherca, then lying in the Port of Valencia, Kingdom of Spain, 20,000 crates and 5,000 half cases of onions marked, "The Spanish Grandee," which were to be carried to the Port of New York, and there to be delivered, in like good order and condition as when shipped, to his own order in consideration of the payment then made of a certain agreed freight. A bill of lading was issued, signed and delivered to the shipper by the duly authorized representative of the steamer, which bill of lading recited, "Shipped in apparent good order and condition." On or about December 15, 1927, the steamer, having on board the said onions, sailed from the said Port of Valencia, Kingdom of Spain, and on or about January 7, 1928, arrived at the Port of New York, and thereafter made dis-charge of the said onions and delivered part thereof.

Prior to the commencement of this action, and prior to the arrival of the steamer, the libelants became the owners of the bill of lading for said onions and the owners of all the rights and causes of action in and to the said shipment. It is the contention of the libelants that said onions were not in like good order and condition as when shipped, but short, slack, and seriously injured and damaged by and through the negligence of the steamer in respect to the loading, stowing, custody and care, and proper delivery of the merchandise, and by and through the unseaworthiness of the steamer.

The onions, when placed upon the ship, were in good order and condition. When they arrived at the Port of New York they were in an injured and damaged condition. The burden was therefore upon the ship to go forward with evidence and explain the cause of damage. The Skipsea (C. C. A.) 9 F.(2d) 887. This burden it has failed to meet.

The testimony of the libelants that the onions were shipped in good order and condition and were damaged through the fault of the ship is convincing. Not only does the bill of lading recite that the onions were received by the ship "in apparent good order and condition," but the deposition of Vincente Remoli, taken in Spain, shows that the onions when shipped were in good order and condition.

It is not disputed that some of the onions were damaged on discharge in New York; 2,517 crates and 174 half cases of these onions were condemned and seized by the department of health of the city of New York as unfit for consumption; a certain part of the shipment of onions was smashed and spoiled, and a large quantity of the crates was smashed and empty. Onions are perishable and require considerable ventilation, usually accomplished by the passage of air through large sized ventilators at opposite ends of the compartment. No. 4 tween deck was not properly ventilated for a shipment of onions, and this was the cause of the damage to the onions in that compartment.

While it appears that there were two storms at sea, they should have been anticipated by the ship, and the nature of these storms was not such as to constitute them perils of the sea. Had all the cargo been damaged by water there might be some claim worthy of consideration that the damage was

caused by an excusing peril of the sea. In that event the damage would have been uniform and not confined to No. 4 tween deck.

The damage to the onions in No. 5 lower hold was due to breakage. No breakage occurred elsewhere on the ship. If the storms had been of unusual severity, the breakage undoubtedly would have occurred on other parts of the ship. But the stowage was improper, for the cargo, which was not thoroughly secured or shored, shifted into a vacant space in the stow, thereby causing the breakage in No. 5 lower hold.

It is claimed that the following paragraph in the bill of lading exempts the carrier from liability: "The Carriers shall not in any event be liable for loss of, or damage to Meat, Butter, Fruit, Eggs, and/or other perishable goods whether placed or carried in cool or refrigerated chambers or not and whether before or after shipment. All such Goods are carried at Shipper's risk absolutely and on the express condition that they and the Receivers under Bills of Lading waive any warranty of seaworthiness, implied or otherwise, whether in relation to the Hull machinery (refrigeration or otherwise), or appurtenances on the said Ship, the Carriers undertaking only for the appointment of experienced Officers and Engineers, the Shippers being at liberty to inspect the refrigeration chambers prior to shipment of their goods." A carrier cannot exempt itself from liability due to its own negligence. The Skipsea (C. C. A.) 9 F.(2d) 887.

It is also claimed that no notice of claim for damages was given as to the onions condemned by the board of health. The paragraph in the bill of lading dealing with notice is as follows: "Notice of any claim arising under this Bill of Lading must be given in writing by the Consignees to the Agents of the Ship at the Port of Destination within 48 hours after landing of or failure of the Carriers to deliver said goods. When the goods are not delivered the time for giving notice shall commence from the date of departure from the port of destination of the ship purported to have carried said goods, and all claims must be presented within two months from the date of arrival of the ship at destination."

The board of health condemned as unfit for human consumption a considerable portion of the onions. This was done on the dock and the onions were not delivered. It cannot be successfully contended that the onions, having been condemned by the board of health on the dock, were either removed or delivered. The San Guglielmo (C. C. A.) 249 F. 588. However, due notice of damage was given. Objections were made to the receipt in evidence of the depositions of the seamen. These have been admitted in evidence and considered by the court.

The evidence sustains the finding that the onions in No. 4 tween deck were damaged because of insufficient ventilation, and the onions in No. 5 lower hold were damaged from breakage negligently caused.

The libelant is entitled to a decree.

Settle decree on notice.